OPINION
This is an appeal from the Ashtabula County Court of Common Pleas by appellants, John Ensell, Rose Ensell, Dan Dreslinski and Flora Greenawalt from the trial court's July 19, 1999 judgment entry.
Appellants are homeowners in the city of Conneaut, Ohio. As early as June 17, 1996, each of their properties began being flooded, which continued for at least a couple days. During that time, there was a rainstorm. On approximately June 18, 1996, one of the appellants contacted appellee, the city of Conneaut, to report the flooding. On June 19, 1996, appellee's water department discovered that one of the underground, lateral waterlines located on Mortgage Service Corporation's ("MSC") property had burst and leaked water, causing damage to appellants' residences located to the east of the plaza. The lateral waterline was connected to the main waterline owned and operated by appellee. The break in the waterline was not immediately detected because heavy rain had occurred in the area during that period of time, making detection difficult.
On October 10, 1996, appellants filed a complaint against MSC and appellee for money damages due to the damage which occurred to their properties as a result of the flooding. Specifically, appellants alleged that MSC negligently failed to maintain its lateral waterline in a satisfactory condition. Appellants further alleged that appellee failed to act promptly in turning off the water at the main line, which would have mitigated their damages. Thus, appellants sought money damages against appellee and MSC "jointly" in the amount of $200,000, which represented damages for property loss and pain and suffering.
On May 28, 1998, MSC filed a motion for summary judgment on the basis that appellants could not show them to be negligent, as a matter of law. Moreover, on June 3, 1998, appellee filed a motion for summary judgment. In that motion, appellee argued that summary judgment was appropriate since appellants' claims against it were barred by the "public duty rule." After an oral argument on the motions was heard, the trial court issued a judgment entry dated July 31, 1998, granting appellee's motion and MSC's motion concerning their negligence. However, appellants were granted leave to amend their complaint to state a claim of trespass against MSC. The matter then proceeded against MSC, which, as indicated in the lower court's July 19, 1999 judgment entry, resulted in appellants and MSC reaching a settlement in the matter.[1] The claims against MSC were dismissed with prejudice by agreement of the parties.
Appellants now appeals the trial court's July 31, 1998, granting of summary judgment in favor of appellee:
 "[1.] The [t]rial [c]ourt erred in granting summary judgment for [appellee] in the face of its not enforcing [a]ppellants' discovery requests to the [c]ity of Conneaut despite repeated motions for enforcement and time extension by [a]ppellants.
 "[2.] The [t]rial [c]ourt erred in not finding [a]ppellee [c]ity of Conneaut negligent in its actions regarding the flooding on [a]ppellants' property and in not holding [a]ppellee liable for the damages suffered by [a]ppellants therefrom."
Initially we note that appellants' assignments of error are timely filed even though they concern the trial court's judgment entry dated July 31, 1998, which was rendered over one year prior to the filing of the instant appeal. Briefly, this appeal is timely because the July 31, 1998 judgment entry was not a final appealable order until the matter was concluded by the lower court's July 19, 1999 order. The 1998 judgment entry was not a final appealable order because when that entry was filed, there existed multiple claims and parties to the action. Pursuant to Civ.R. 54(B), in a situation where there are multiple parties or claims and the judgment entry enters "final judgment as to one or more but fewer than all of the claims or parties," then the order is not a final appealable order in the absence of language stating there is "no just reason for delay."
In this matter, the 1998 judgment entry concluded the claims against appellee, but not those claims against MSC. In addition, the court did not write that there was "no just reason for delay" regarding the appeal of that order. Also, although the matter affected a substantial right, it was not a special proceeding. Thus, the matter was not a final appealable order on the basis of R.C. 2505.02. See, also, State ex rel. Papp v. James (1994),69 Ohio St.3d 373; Noble v. Colwell (1989), 44 Ohio St.3d 92.
For purposes of clarity, appellants' second assignment of error will be addressed first. In the second error assigned, appellants contend that appellee is liable for its employee's negligent acts or omissions in the operation and maintenance of the water system, which is a proprietary function.
 "Pursuant to R.C. 2744.02(B)(2), a political subdivision is liable * * * for injury, death, or loss to persons or property caused by an act or omission of the political subdivision or any of its employees in connection with the performance of a proprietary function." Hill v. Urbana (1997), 79 Ohio St.3d 130, paragraph one of the syllabus. Additionally, "[t]he `establishment, maintenance, and operation' of a municipal corporation water supply system encompasses, but is not limited to, the installing of water lines, equipment, and other materials which are a necessary part of the system and such activity is a proprietary function of a political subdivision." Id. at paragraph two of the syllabus.
In this court's case, Fatobene v. Warren (May 3, 1996), Trumbull App. No. 95-T-5269, unreported, at 3, 1996 WL 297002, we held that a municipality is not liable for the maintenance of a lateral waterline on private property, when that waterline has only been used for private purposes. In that case, the appellants were landowners who sued the city of Warren after their basement flooded. After a private company was unable to remedy the problem, water department employees were called and tried to clear a sewage line that they thought had been clogged. The city employees were not allowed to attempt to locate the place underground where the lateral line connected with the main line. The appellants then hired an excavator, who found that the lateral sewer line was broken approximately one foot away from the main line. The appellants filed suit on the basis that the appellee had negligently attempted to show them the location of the lateral line and main line connection, and that the appellee was negligent in failing to properly maintain and inspect the sewage lines. This court held that the lateral line had never been used for public purposes and, thus, the city was not liable. Id.
In Kaczor v. Bellaire (July 13, 1998), Belmont App. No. 96 BA 60, unreported, 1998 WL 404189, the appellant sued the city of Bellaire concerning a defective lateral sewer line. In that case, the appellate court held:
 "* * * If the line is not used for public purposes but is for purely private use, like the Fatobenes' [referring to Fatobene, supra, unreported] and the present Appellant's, a city is not obligated to maintain it. Since the homeowner benefits from the tie in with the main sewer line, even though the city may participate in the original tap-in, the homeowner is responsible for the subsequent maintenance of that private service line called a lateral. This is true even where the actual repair to the lateral line takes place on city property." Id. at 5.
In the instant matter, it is uncontroverted that the broken line causing the water damage to appellants' residences was a lateral line located on MSC's property. Moreover, there is no evidence that the lateral line was used for anything other than private use. Consequently, on the basis of our prior holding in Fatobene and that in Kaczor, appellee had no duty to maintain or repair the lateral line. Therefore, contrary to appellants' argument, appellee could not have acted negligently in maintaining or repairing the lateral line as a matter of law, because such responsibility was on the part of the private landowner, who utilized the lateral line. In this case, the liable party was MSC.
Also, appellee is not liable for failing to turn off the water at the main line due to the fact that the lateral line was the line that broke, and it could be disconnected on MSC's property. Additionally, since the break occurred in the middle of a severe thunderstorm, it was entirely reasonable for there to be a delay in determining whether the water was merely an accumulation of rainfall or the product of a broken line, in which case the actual line had to be identified. Therefore, appellants' second assignment of error is without merit.
In the first assigned error, appellants aver that the trial court erred in granting summary judgment in favor of appellee when several discovery requests concerning appellee's liability were not complied with or enforced.
At the outset we note that a motion for summary judgment is governed by Civ.R. 56, which states:
 "* * * Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. * * *"
Due to the fact that appellee could not, as a matter of law, be held liable for the water damage that occurred to appellants' residences, as discussed in addressing the second assignment of error, this error is rendered moot. Indeed, even assuming that discovery was not complied with, the trial court could render summary judgment in favor of appellee since there was no genuine issue of any material fact and appellee was entitled to judgment as a matter of law.
Additionally, appellee was never served with any request for the production of documents concerning the relationship between the builder of MSC's property and appellee, contrary to appellants' argument that such information was never provided to them. Also, in regard to appellants' contention that appellee never responded to their motion to compel, the record reveals that such motion was never served upon counsel for appellee, and appellants' counsel failed to appear at the pretrial conference in this matter. Finally, appellants' counsel failed to comply with Civ.R. 37(E) because no effort was made to resolve the "discovery dispute" prior to filing any motion to compel, which is mandatory. Thus, appellants' first assignment of error is meritless.
For the foregoing reasons, appellants' assignments of error are not well-taken, and the judgment of the Ashtabula County Court of Common Pleas is affirmed.
 ______________________________________ DONALD R. FORD, Presiding Judge
CHRISTLEY, J., O'NEILL, J., concur.
[1] The record reveals that subsequent to the filing of the complaint against MSC, Conneaut Plaza was sold by MSC to MCM Conneaut Plaza I, Inc. ("MCM"). The record further reveals that appellants settled their cases with MSC and MCM.